UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALY ZAMORANO SANCHEZ,<br>(A-No. 232-088-795)<br>Petitioner,<br>v.<br>CHESTNUT, et al.,<br>Respondents. | Case No. 1:26-cv-06694-JLT-HBK<br>ORDER GRANTING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE REQUEST FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING RESPONDENTS TO PROVIDE A SUBSTANTIVE BOND HEARING<br>(Docs. 1, 2) |

## I. INTRODUCTION

Before the Court is Nataly Zamorano Sanchez's request for a temporary restraining order (Doc. 2), filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, which challenges her ongoing detention. (Doc. 1.) Respondents filed an opposition to the TRO and habeas petition, asserting that Petitioner is detained under 8 U.S.C. § 1226(a) after overstaying her nonimmigrant visa. (Doc. 7 at 1–2.) For the reasons set forth below, the Court **GRANTS IN PART** the habeas petition.[1]

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 4.) Respondents "do not oppose the Court ruling on the underlying habeas petition without a hearing," nor do they request additional briefing. (Doc. 7 at 4.) Further, Petitioner does not request a hearing or further briefing. (*See* Doc. 8.) Considering this, the Court decides the case on the underlying petition on the current record and briefing.

habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks her immediate release from custody, which she contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 21.) Thus, she properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review the habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## III. BACKGROUND

Petitioner is from Mexico. (Doc. 1 at 5.) Petitioner first entered the United States sometime after May 2015, using a Visa Border Crossing Card, which allowed her to enter the United States on multiple occasions.[2] (*See* Doc. 1 at 5; Doc. 2-3 at 5.) On November 20, 2015,

---

[2] Petitioner's Border Crossing Card (BCC) was valid for ten years, from May 11, 2015, until May 7, 2025. (Doc. 2-3 at 5.) To qualify for a BCC, the applicant (1) must be a citizen and resident of Mexico; (2) must meet the eligibility standards for B1 and/or B2 visa and plan to stay in the United States no more than six months; and (3) must demonstrate that they have ties to Mexico that would compel them to return after a temporary stay in the United States. *Travel.State.Gov.*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/border-crossing-card.html (last visited September 17, 2026); 22 C.F.R. § 41.32(a)(1)(i)–(iii).

A Form DSP-150 is used to obtain both a BCC and a B1/B2 visitor visa. *Travel.State.Gov.*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/border-crossing-card.html (last visited September 17, 2026). While the BCC and the B1/B2 visa are often issued in tandem, *see* 22 C.F.R. § 41.32(a)(1); 8 C.F.R. § 212.6(a), Petitioner did not receive her B2 authorization from USCIS until years later in June 2022. (*See* Doc. 2-3 at 61; Doc. 7 at 7.) Nonetheless, it appears that Petitioner had some form of "visa status" with the BCC as early as 2015, which allowed her to enter the United States.

While a BCC is typically valid for ten years, the ten-year period refers to the period in which the holder can cross the border. *See VisaHelp By GovAssist*, https://visahelp.us.com/bcc/ (last visited September 17, 2026). However, it does not mean that the holder can stay in the United States continuously for ten years; instead, a BCC holder may only visit the United States for tourism or business

Petitioner gave birth to her child in Bakersfield, California. (Doc. 2-1 at 3; Doc. 2-3 at 7.) It is unclear whether Petitioner remained in the United States at that time or left within three days of entry as required when using a BCC. *See Gutierrez-Gutierrez v. Garland*, 991 F.3d 990, 992 (8th Cir. 2021) ("The card functioned as a visitor's visa and permitted him to remain in the United States for three days"). At some point after giving birth, Petitioner left the United States and married her husband Adolfo Morin Sifuentes in Mexico on April 13, 2018. (*See* Doc. 2-3 at 57–59.) According to Petitioner, she and her husband lived near the U.S./Mexico border and would regularly cross over during vacations or weekends. (Doc. 2-4 at 11.) Petitioner's husband is a United States lawful permanent resident. (*See* Doc. 2-3 at 68.) Soon after their marriage, on August 14, 2018, Petitioner's husband filed an I-130 petition for alien relative. (Doc. 2-3 at 9.) On January 6, 2020, USCIS indicated that the petition had been approved and sent to the Department of State National Visa Center for further processing. (*Id.*) However, the approval notice indicates that it is not a visa, may not be used in place of a visa, and does not in itself grant any immigration status. (*Id.*)

On June 13, 2022, Petitioner reentered the United States after being approved for a temporary nonimmigrant B2 visa. (Doc. 7 at 7; *see* Doc. 2-3 at 66.) Petitioner's B2 visa was initially valid until December 12, 2022, however USCIS granted an extension on the visa until June 12, 2023. (Doc. 7 at 7; Doc. 2-3 at 65.) On November 30, 2022, Petitioner submitted an I-485 application for adjustment of status. (Doc. 2-3 at 42.) Petitioner never left the country as required on June 12, 2023, and instead overstayed her visa. (*See* Doc. 2-1 at 4.) For the next few years, Petitioner built a life in the United States and even purchased a home with her husband.

---

purposes for three days. *See id.*; *Gutierrez-Gutierrez v. Garland*, 991 F.3d 990, 992 (8th Cir. 2021) ("Gutierrez entered the United States in 1996 using a border crossing card, *see* 8 C.F.R. § 212.6(a), and his Mexican passport. The card functioned as a visitor's visa and permitted him to remain in the United States for three days, but he stayed until 1998.") (emphasis added). To be admitted on a BCC, the holder's nonimmigrant visa must "not [have] expired," and the noncitizen must "remain[] otherwise admissible." *See* 8 C.F.R. § 212.6(b)(2)(ii). If an "immigration officer determines that the alien has violated the conditions of the alien's admission into the United States, including the period of stay authorized by the Secretary of Homeland Security" the BCC becomes void. *See* 22 C.F.R. § 41.32(d)(2). Thus, it appears that upon expiration of Petitioner's B2 visa on June 12, 2023, Petitioner would no longer have been eligible to reenter the country using her BCC, despite it technically being valid until May 2025. *See id.*; (Doc. 2-3 at 5, 65.)

(*Id.*) On April 2, 2025, USCIS granted Petitioner's I-512L request for advance parole, valid until April 1, 2030. (Doc. 2-3 at 63.) However, Petitioner never left the United States at that time, nor is there any indication that Petitioner has been paroled into the country since her last entry in 2022. (*See id.*) The parole stamp on the I-512L authorization notice remains blank, (*id*), and Petitioner herself indicates that her "most recent entry occurred on June 13, 2022, through the Otay Mesa, California port of entry" using her BCC and her B2 visa. (Doc. 1 at 6; Doc. 2-3 at 66; Doc. 2-4 at 11.)

On June 9, 2026, Petitioner received notice from USCIS to appear for an interview in relation to her I-485 application for adjustment of status. (Doc. 2-3 at 32.) On July 14, 2026, Petitioner appeared for her interview and afterwards, received notice from USCIS that her case was being held for further review. (*Id.* at 35.) On July 16, 2026, USCIS notified Petitioner that only EOIR had jurisdiction to grant or deny her I-485 application on the merits because she is currently in removal proceedings and is not an "arriving alien." (Doc. 2-3 at 40.) As such, USCIS administratively closed Petitioner's I-485 application, but allowed her to seek a ruling on the merits through EOIR instead. (*Id.*)

On July 14, 2026, after the interview had concluded, Petitioner was arrested by ICE officers. (Doc. 7 at 7.) According to the I-213, an administrative warrant was prepared for her arrest (*id*); however, Petitioner claims that officers did not present her with an arrest warrant. (Doc. 1 at 7.) Petitioner indicates that officers told her she was being arrested because her visa had expired. (Doc. 1 at 7.) That same day, DHS issued a Notice to Appear charging Petitioner as removable under the INA § 237(a)(1)(B), codified in 8 U.S.C. § 1227(a)(1)(B), for overstaying her visa. (Doc. 7 at 10.) Petitioner was subsequently transferred to California City Detention Center where she remains. (Doc. 1 at 4.) Petitioner is not currently subject to a final order of removal.[3]

On June 1, 2025, Petitioner was arrested for inflicting corporal injury under Cal. Pen.

---

[3] Upon entering Petitioner's A-Number into EOIR's website, the Automated Case Information indicates that Petitioner's docket was opened July 15, 2026, and that her removal proceedings are ongoing with no final order of removal in place. EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited September 18, 2026).

Code § 273.5. (Doc. 7 at 8, 17.) According to Petitioner's RAP sheet, the June 22, 2025, disposition for this offense states, "PROS REL—DET ONLY—LACK OF SUFF EVID." (*Id*. at 17.) It is unclear whether this arrest rendered criminal charges, and whether such charges were ultimately dropped or remain pending. (*See id*.) According to Petitioner, this incident related to a "verbal argument between" her and her husband, and that when police arrived at her home, they informed her that they were not arresting her because of her domestic argument, but rather because of an outstanding warrant, of which she claims she was not aware. (Doc. 2-4 at 12.) Furthermore, according to Petitioner, sometime in 2025 her family suffered theft of a large sum of money, which resulted in conflicts with certain people, and "[a]s a consequence of those incidents, prosecutors initiated a criminal proceeding against me that currently remains pending." (*Id*. at 11.) Petitioner indicates that she hired a criminal defense lawyer and appeared at all scheduled hearings. (*Id*.) Interestingly, Respondents indicate that Petitioner has been "convicted of grand theft, was charged in 2024 with failure to appear (although that charge has now been dismissed), and recently violated [her] probation." (Doc. 7 at 3.) However, Respondents provide no evidence of these offenses. (*See id*. at 3, 8, 17.) Nonetheless, based on Petitioner's admissions, it appears she has/or had outstanding warrant, and has pending criminal charges. (Doc. 2-4 at 11, 12.)

On August 21, 2026, Petitioner filed a petition for writ of habeas corpus and TRO arguing that she is entitled to an adjudication by USCIS on her adjustment of status application; that her detention inhibits her ability to obtain adjustment of status; and that her detention at her adjustment of status interview constitutes arbitrary conduct, violates due process, and offends the concept of ordered liberty. (*See* Doc. 1 at 12–21.) Petitioner seeks immediate release or alternatively, a bond hearing before an immigration judge where the government bears the burden of proving flight risk or danger. (*Id*. at 21.) On August 28, 2026, Respondents filed an opposition, arguing that Petitioner is detained under 8 U.S.C. § 1226(a) because she overstayed her visa and is only entitled to a custody redetermination before an Immigration Judge where Petitioner bears the burden of proof. (Doc. 7 at 1–4.) On September 3, 2026, Petitioner filed a reply arguing that under prevailing caselaw she is entitled to immediate release because she was

arrested at her adjustment of status interview. (Doc. 8 at 1, 3–5.)

## IV. DISCUSSION

Petitioner is currently in removal proceedings under 8 U.S.C. § 1227(a)(1)(B), which states: "Any alien . . . whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable." 8 U.S.C. § 1227(a)(1)(B); (Doc. 7 at 10). As Respondents concede in their opposition, (Doc. 7 at 1–2), Petitioner's detention is governed by 8 U.S.C. § 1226(a). *See Quispe v. Becerra*, No. 1:25-cv-2002 CSK, 2025 WL 3774570, at *1, 5 (E.D. Cal. Dec. 31, 2025) (explaining that the only statute which could provide detention over petitioner—a noncitizen who had overstayed her visa and whose removal proceedings were ongoing—was 8 U.S.C. § 1226 because that statute expressly provides for detention before a final order of removal) (citation and quotation omitted); *Wei v. Chestnut*, No. 1:26-cv-01065-DJC-CKD, 2026 WL 412203, at *1 (E.D. Cal. Feb. 13, 2026) (finding that petitioner, who had overstayed his visa as a visitor for pleasure, was detained under § 1226(a) because he had been present in the United States since 2018 and was not an "applicant for admission" under § 1225).

Under Section 1226(a), "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on—(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Here, the Government has already made an initial custody determination pursuant to 8 C.F.R. § 1236.1(b)(1) to detain the Petitioner pending an outcome on her removal proceedings. (*See* Doc. 7 at 7.) That regulation provides: "In general. At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the [petitioner] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1). Although Petitioner claims that she never received an administrative warrant at the time of her arrest, (Doc. 1 at 7), the record indicates that DHS has made that an initial custody determination

pursuant to § 1236.1(b)(1). (*See* Doc. 7 at 2, 7, 10.) The record shows that an administrative warrant was generated and signed by the acting deportation officer, and that Petitioner was served with a Notice to Appear the day of her arrest. (*Id*. at 7, 10, 12.)

On habeas grounds, Petitioner now seeks immediate release because she was arrested at her adjustment of status interview; or alternatively a bond hearing where the Government bears the burden of proving by clear and convincing evidence that Petitioner presents a flight risk or danger. (Doc. 1 at 19–21.) Petitioner also asks this Court to require USCIS to continue adjudicating her I-485 application pursuant to 8 U.S.C. § 1255(a); to order a stay of removal to prevent her adjustment of status application from being deemed abandoned; and to order her immediate release because the government will otherwise impede her from receiving the requisite medical examination needed to complete her I-485 application. (Doc. 1 at 12–19; Doc. 2-1 at 9–14.) The Court rejects these arguments for following reasons.

First, Petitioner is only entitled to a § 1226(a) custody redetermination hearing before an Immigration Judge where she bears the burden of proof. This is because Petitioner overstayed her visa, and under applicable regulations, she would only be entitled to a custody redetermination. As this Court previously explained:

> [Section] 1226(a) establishes a discretionary detention framework where the immigration officer first determines whether to detain or release the non-citizen while their immigration case is ongoing. 8 U.S.C. § 1226(a); *Otilio B.F.* [*v. Andrews*], 809 F. Supp. 3d [1038,] [] 1048–49 (citations and quotations omitted). After that decision has been made, the non-citizen may request a bond hearing before an IJ. 8 C.F.R. § 1236.1[ ](d)(1). At that bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the [Immigration Judge] . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

*Quinteros Cornejo v. Andrews*, 823 F. Supp. 3d 1085, 1094 (E.D. Cal. 2026). Here, there is no indication in the record that Petitioner was previously paroled into the country or assessed for flight risk and danger upon entry. While she was "admitted" into the United States on June 13, 2022, she was only admitted pursuant to her authorized B2 visa. (Doc. 2-3 at 66.) As such, immigration officials only allowed her to enter for a limited period not to exceed December 12,

2022. (*Id.*) That period was later extended to June 12, 2023. (Doc. 2-3 at 65.) Such admission was meant to be temporary and was based solely on her B2 visa authorization at the time. *Cf. Ortiz Donis v. Chestnut, et al.*, No. 1:25-cv-01228-JLT-SAB, 2025 WL 2879514, at *1 (E.D. Cal. Oct. 9, 2025) (explaining that in releasing the petitioner into the interior of the country after apprehending him at the border, immigration officials necessarily determined that he did not present a risk of flight or danger to the community). She never left the country in June 2023 as required, and instead, remained in the United States unlawfully for the following years. (*See* Doc. 1 at 6.)

While Petitioner argues that she was paroled on April 2, 2025, such conclusion is incorrect. (*See* Doc. 1 at 6.) It is true that on April 2, 2025, USCIS granted Petitioner's I-512L request for *advance* parole, which remains valid until April 1, 2030. (Doc. 2-3 at 63.) However, the parole stamp on the I-512L authorization notice remains blank and Petitioner herself indicates that her last entry into the United States occurred back in June 2022. (*See id*. at 63, 66; Doc. 1 at 6.) As such, this Court cannot conclude that immigration officials have paroled the Petitioner into the country after her B2 visa expired. *Cf. Martinez Melendez v. Warden*, *Golden State Annex*, No. 1:26-cv-05008-JLT-EGC, 2026 WL 2539195, at *1–2 (E.D. Cal. Aug. 27, 2026) (explaining that petitioner was actually paroled into the United States on July 19, 2014 with temporary protected status, after having been approved for I-512 advance parole on March 25, 2013).

Additionally, Petitioner's argument that she is entitled to immediate release because she was arrested at her adjustment of status interview is unpersuasive. (Doc. 1 at 19–20.) This Court has previously ordered a § 1226(a) bond hearing, not immediate release, for similarly situated petitioners. *See Marquez v. Warden, et al.*, No. 1:26-cv-04528-JLT-SAB, 2026 WL 2268762, at *1–3 (E.D. Cal. Aug. 6, 2026) (ordering a § 1226(a) bond hearing to a petitioner arrested at his I-485 adjustment of status interview where petitioner had overstayed his visa); *Francisco C.P. v. Warden, Golden State Annex*, No. 1:26-cv-01087-JLT-SKO, 2026 WL 594138, at *1–2 (E.D. Cal. Mar. 3, 2026) (ordering a § 1226(a) bond hearing to a petitioner arrested at his I-485 adjustment of status interview where petitioner had entered the country years ago without

permission and never received a formal determination as to flight risk or danger).

Furthermore, the proposition that the Government can never arrest a noncitizen at their adjustment of status interview is overbroad. Here, Petitioner was supposed to depart the United States no later than June 2023 but overstayed her visa by many years. (*See* Doc. 1 at 6; Doc. 2-3 at 65.) Even if Petitioner's authorization for advance parole granted some form of status (Doc. 2-3 at 63), Petitioner did not obtain such authorization until April 2025, approximately two years after her visa expired. (*Id*. at 63, 65.) Therefore, ICE officials had a legitimate basis to charge Petitioner as removable under § 1227(a)(1)(B) for overstaying her visa and arrest her under § 1226(a). Importantly, there is no indication that Petitioner's I-130 family petition or I-485 adjustment of status had already been approved at the time of her arrest. In such context, the Court cannot find that Petitioner's arrest amounts to "gotcha" law enforcement or "bait-and-switch tactics" likely to offend the "concept of ordered liberty." *Cf. Franco v. Meyer*, *et al.*, No. 1:25-cv-01620-DAD-CKD, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25, 2025) (citing *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 464–66 (S.D.N.Y. 2018)).

Notably, *You, Xiu Qing* reliance on *Rochin v. California*, 342 U.S. 165, 169 (1952) for this proposition stretches the reach of its holding. Calling in a noncitizen for a pretextual adjustment of status interview to effectuate their arrest is not the equivalent of having an officer burst into someone's home and then require medical personnel to force a tube down their throat to retrieve evidence. *See Rochin*, 342 U.S. at 166, 169, 172. And while the arrest which occurred in *You, Xiu Qing* and *Franco* certainly offend "fastidious squeamishness [and] private sentimentalism about combatting crime too energetically," such arrests do not constitute "conduct that shocks the conscience." *Rochin*, 342 U.S. at 172. Finally, there is no evidence to suggest that the Government employed such tactics in this case. Here, Petitioner attended her interview and was not arrested until *after* it had concluded. (Doc. 2-3 at 35; Doc. 7 at 7.) Furthermore, the Government had a legitimate basis to charge Petitioner as removable for overstaying her visa and detaining her pursuant to § 1226(a).

As to Petitioner's remaining arguments, the Court rejects them. (Doc. 1 at 12–19.) Petitioner fails to establish how this Court has jurisdiction to order USCIS to adjudicate her I-

485 application for adjustment of status. 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, *adjudicate cases*, or execute removal orders against any alien." (emphasis added). Notably, USCIS allowed Petitioner to attend her interview, but ultimately found that because she was not an "applicant for admission" and is currently in removal proceedings, it lacked jurisdiction to decide her case. (Doc. 2-3 at 35, 39–40.) Petitioner retains the ability to pursue adjustment of status but must now do so through EOIR. (*Id*. at 40.) Additionally, Petitioner asks this Court to stay her removal proceedings, stay her removal, and order immediate release because while detained, the Government will likely prevent her from receiving the requisite medical examination needed to complete her I-485 application. (Doc. 1 at 17–19.) Again, this Court lacks jurisdiction to interfere with the executive's decision to "*commence proceedings* . . . or *execute removal orders* against any alien." 8 U.S.C § 1252(g) (emphasis added). Moreover, these issues are not ripe. Petitioner is not currently subject to a final order of removal, nor is there any indication that Petitioner has requested, and that the Government has denied, her request to receive the requisite medical examination.

In conclusion, the Court finds that Petitioner is entitled to a custody redetermination before an Immigration Judge under 8 C.F.R. § 1236.1(d)(1). Respondents do not dispute this, and while they argue that Petitioner should be required to exhaust her administrative remedies, Respondents nonetheless note that the "petition for writ of habeas corpus can be construed as Petitioner's request for a hearing."[4] (Doc. 7 at 2–3, 4.) As such, the Court grants in part Petitioner's habeas petition to the extent she requests and is entitled to such custody redetermination before an Immigration Judge. For the foregoing reasons, the Court **ORDERS:**

---

[4] If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citations omitted). In this case, given that Respondents concede Petitioner is entitled to a § 1226(a) custody redetermination hearing and that Petitioner's habeas petition may be construed as such request, (Doc. 7 at 2–3), the Court finds that pursuit of administrative remedies would be a futile gesture.

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED IN PART**.

2. The motion for temporary restraining order (Doc. 2) is **DENIED** as **MOOT**.

3. **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondents **SHALL** provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(d)(1) at which the parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and a flight risk if not detained.

4. **At least 72 hours before** the scheduled hearing, the Petitioner **SHALL** receive notice of the hearing. She **SHALL** have the right to be represented by counsel at the hearing and **SHALL** be entitled to appear at the hearing. If counsel has filed an appearance in the immigration proceedings, at least 72 hours before the hearing, counsel **SHALL** receive notice of the scheduled hearing.

5. Respondents are **ENJOINED** and **RESTRAINED** from re-arresting or re-detaining Petitioner unless Respondents provide no less than seven days' notice to Petitioner and hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond is considered.[5]

6. The Clerk of Court is directed to serve the California City Detention Facility in California City, California, with a copy of this Order.

7. The Clerk of Court is directed to **CLOSE** this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated: September 18, 2026

UNITED STATES DISTRICT JUDGE

---

[5] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here **SHALL** be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's **SHALL** provide a bond hearing in the timeframe required by law.